CENTRAL NATIONAL BANK *vs.* ELIZABETH I. COPP.

Worcester.      September 29, 1903. — October 22, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Bills and Notes.*

One ratifying a signature on a promissory note purporting to be his and which he knows to be forged is bound by it.

A married woman, to shield her husband, ratified a signature on a promissory note to a bank, purporting to be hers but forged by her husband. At maturity the note was surrendered to the husband on his giving in renewal a note similarly

forged which was accepted in good faith by the bank. In an action by the bank on the first note, it was *held*, that the substitution and acceptance of the second forged note did not constitute a payment, so as to bar an action on the note ratified by the defendant.

CONTRACT on certain promissory notes. Writ dated April 10, 1902.

In the Superior Court the case was tried before *Fox*, J., without a jury. He found for the plaintiff in the sum of $5,390.65; and the defendant alleged exceptions.

*A. P. Rugg*, for the defendant.

*R. Hoar*, for the plaintiff, was not called upon.

HAMMOND, J. The judge found that the name of the defendant on the notes declared on is forged, but that in January, 1899, she called at the bank and acknowledged in some form of words that the three notes then held by the bank " were her notes"; and he found for the plaintiff upon the ground of ratification. The defendant has argued that the finding of ratification is not warranted by the evidence, but we think otherwise. The president testified that after some conversation with the defendant as to " a line of discount on notes" signed by her and her husband jointly, in which he cautioned her as to the practice of signing notes for her husband, he took the three notes then held by the bank and handed them to the defendant and said : " These three notes amount to $6,600; are these all right?" and that she said, " Yes, they are all right." It is true that the defendant in her testimony denied that she said the notes were all right, and testified that the president said to her, " This is your signature, is n't it?" and that she replied, " That is my name." She further testified that the thought of forgery came to her mind, and she stopped. It might perhaps be argued that under the circumstances ratification could fairly be found upon the defendant's own testimony, but, whether that is so or not, there can be no doubt that, if the president's version of the interview is correct, the judge was amply justified in finding that with full knowledge of the circumstances she, for the purpose of shielding her husband, ratified the signature. By reason of this ratification she became liable as though her name had been originally placed upon the notes by her authority, even although there was forgery ; and the question whether there was a liability by estoppel

became immaterial. *Greenfield Bank* v. *Crafts*, 4 Allen, 447, 454. *Wellington* v. *Jackson*, 121 Mass. 157.

It is further argued that the three notes have been paid. There is no doubt that the bank went through all the forms usual in cases of payment. Upon maturity the notes were charged against the account kept by the husband in the bank, cancelled by perforation, marked "paid" and, with checks and other things that were properly charged to his account, were handed to him with his bank book whenever it was balanced. The defendant contends that in this way each note was paid as it matured, and that the taking by the bank of subsequent notes for the same respective amounts constituted in each case a new transaction. The judge, however, has found that "when the notes became due, they were surrendered to Copp [the husband] upon the substitution of other similar forged notes," and that "the method of renewal was this, — the notes were charged to Copp's deposit account in the bank and the new notes were at the same time credited to the same account"; and he rules that "the surrender of the notes by the bank upon the substitution of forged notes does not extinguish the bank's right of recovery." The evidence justifies this finding. According to the testimony of the plaintiff's president these notes constituted a "line of discount," and there is nothing to show that either the bank or Copp supposed that any note was paid in any other way than is quite usual in such cases, namely, by the substitution of a new note by the way of renewal. The plaintiff never intended to release the defendant from her obligation on these three notes and to look to the husband alone, and having received the renewal notes upon the faith that they were valid as to the defendant may treat them as a nullity and may recover upon the original notes. *Leonard* v. *Taunton Congregational Society*, 2 Cush. 462. *Almy* v. *Reed*, 10 Cush. 421.

Lastly, the defendant argues that there was such negligence on the part of the plaintiff and its officers as should preclude a recovery; and the fourth and fifth requests relate to that branch of the defence. It is plain, however, from the report that these were among the requests regarded by the judge as inapplicable to the facts found by him. He finds that the plaintiff accepted without question and without suspicion the defendant's state-

ment as to the validity of her signature to the three notes in question, and that the bank was not informed of the forgery until after the husband's death. It does not appear that the real signature of the defendant was ever known to the officers or that they had any reason to suspect forgery.

It is not argued by the defendant that the thirteenth request is an accurate statement of the law.

In view of the findings of the judge it is unnecessary to go over the requests in greater detail. So far as shown by this record, for reasons above stated, we think that the judge rightly dealt with them.

As to the exclusion of the testimony of the witnesses Chapin and Willis, it is enough to say that it does not appear that the alleged conversations with Marsh the president occurred before the bank ceased to discount the Copp notes.

*Exceptions overruled.*